**Chris Mertens, OSB No. 092230**
Mertens Law, LLC
850 SE 3rd Avenue, Suite 302
Portland, OR 97214
Telephone: (503) 836-7673
Facsimile: (503) 206-0115
Chris@MertensCSBLaw.com

**Matthew Sutton, OSB No. 924797**
Law Office of Matthew Sutton
205 Crater Lake Avenue
Medford, OR 97504
Telephone: (541) 772-8050
ms@matthewsuttonlaw.com

Attorneys for Laru Pereschica and Rafael Sandoval

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON (EUGENE)

| | |
|---|---|
| LARU PERESCHICA, an individual, and RAFAEL SANDOVAL, and individual, | Case No.: 6:25-cv-507-XX |
| | COMPLAINT |
| Plaintiffs, | Unlawful Collection Practices |
| v. | 15 U.S.C. § 1692k, et seq |
| HERSHNER HUNTER, LLP, an Oregon Limited Liability Partnership, and SELCO Community Credit Union, an Oregon State-Chartered Credit Union, | Unlawful Trade Practices ORS 646.608 |
| | Unlawful Debt Collection ORS 646.639 |
| Defendant. | DEMAND FOR JURY TRIAL |

## PRELIMINARY STATEMENT

1.

This is an action for money damages brought by a consumer pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.608, *et seq*, and the Oregon Unlawful Debt Collection Practices Act (OUDCPA), ORS 646.639, *et seq*, as amended by the Family Financial Protection Act of 2024. The FDCPA was enacted by Congress to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

2.

The FDCPA is a strict liability statute. *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011). Violations of the FDCPA's provisions are assessed from the perspective of the least sophisticated debtor, rather than from the perspective of the actual plaintiff. *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997)(citing *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996)). A debt collector can violate the FDCPA "regardless of whether a valid debt exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)(citing to the legislative history for the FDCPA). The FDCPA is a remedial statute and should be interpreted liberally to protect debtors from abusive debt collection practices. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1025 (9th Cir. 2012)(citing *Clark v.*

*Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1168 (9th Cir. 2006)). The FDCPA must not be to read "in a way that is antithetical to Congress's express intent to protect consumers from abusive debt collection practices." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1079 (9th Cir. 2016).

3.

Both the OUDCPA and the UTPA transformed the public into "private attorneys general" by authorizing consumers who are injured by or suffer an ascertainable loss of money or property as a result of; a person's willful action; that violates the statute; to sue in their own names and recover damages. Like the FDCPA, the OUDCIPA and UTPA are to be interpreted liberally in favor of consumers. *See, e.g., Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n.4, 566 P.2d 1177 (1977)(discussing legislative history of Oregon's enactment of the UTPA).

<u>**JURISDICTION**</u>

4.

Jurisdiction is conferred on this Court pursuant to 15 U.S.C. § 1692k(d) and generally pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the OUDCPA and UTPA claims in this action pursuant to 28 U.S.C. § 1367(a), as the state law claims are so related to the FDCPA claims as to arise from a common nucleus of operative fact and are part of the same case or controversy .

5.

Personal jurisdiction over defendant Hershner Hunter, LLP (hereinafter "HH") is proper pursuant to Fed. R. Civ. P. 4(k).

6.

Personal Jurisdiction over defendant SELCO Credit Union ("SELCO") is proper pursuant to Fed. R. Civ. P. 4(k). Joinder of SELCO in this action is necessary to avoid inconsistent adjudication of Plaintiffs' claims and provide consistent relief for each plaintiff where, as here, the common facts with the FDCPA claims rationally support litigating the matters together.

7.

The OUDCPA and UTPA claims Plaintiffs assert against HH and SELCO arise under the substantially similar facts and circumstances as the facts giving rise to the FDCPA claim, over which this court has jurisdiction.

8.   .

Venue is proper before this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred within this district, Plaintiffs Laru Pereschica and Rafael Sandoval (collectively, "Plaintiffs" and individually, Ms. Pereschica and Mr. Sandoval, respectively) reside in this district, Defendant HH's primary office and principal place of business is within this district. Defendant SELCO's primary office and principal place of business is within this district.

## **PARTIES**

9.

Plaintiff Ms. Pereschica is a natural person and a resident of Jackson County in the State of Oregon. Plaintiff Mr. Sandoval is a natural person and a resident of Jackson County in the State of Oregon. Plaintiffs Ms. Pereschica and Mr. Sandoval have two children together in a long-term committed relationship. Except where expressly stated to the contrary, the Plaintiffs are similarly situated as Plaintiffs in the instant matter. Unless specifically noted to the contrary, all factual allegations herein apply to both Ms. Pereschica and Mr. Sandoval.

10.

The Plaintiffs were and at all times pertinent to the allegations made herein persons, natural persons, and consumers within the meaning of the FDCPA 15 U.S.C. § 1692a(3).

11.

At all times pertinent herein, the alleged debts (hereinafter "debts") HH attempted to collect from Plaintiffs were "debts" within the meaning of 15 U.S.C § 1692a(5), as debts represented amounts owed for consumer credit provided by SELCO Credit Union to Mr. Sandoval. The debt was incurred for personal, family, and/or household purposes; specifically Mr. Sandoval's household expenses.

12.

Defendant HH is an Oregon Professional Corporation organized under Oregon law, with a principal place of business located at 675 Oak Street, Suite 400 Eugene, Oregon 97401.

13.

Defendant HH upon information and belief, is engaged in collection of defaulted consumer debt incurred by consumers for goods and services provided for personal, family, and/or household purposes.

14.

Defendant HH regularly files lawsuits, garnishment documentation, and foreclosure actions for the collection of defaulted consumer debt on behalf creditors, including SELCO, and engages in the regular collection of defaulted alleged debts incurred by consumers for personal, family, and/or household purposes.

15.

Upon information and belief, Nancy K. Cary, (hereinafter "Cary"), an Oregon attorney is employed by HH who regularly files lawsuits in Oregon against Oregon consumers on behalf of client creditors and debt-owners. Upon information and belief, Cary has also issued garnishments in Oregon against Oregon consumers on behalf of client debt collectors and debt-owners.

16.

At all times relevant to the Plaintiffs' claims asserted herein, HH acted within the ordinary scope of its business by and through Cary and one or more of its

employees, agents, or partners within the course and scope of its agency or
employment by creditors to collect debts owed by Oregon consumers to those
creditors.

17.

Upon information and belief, HH has not designated a registered agent with the
Oregon Secretary of State but has a principal place of business at: 675 Oak Street, Suite
400, Eugene, Oregon 97401.

18.

Upon information and belief, SELCO has not designated a registered agent
with the Oregon Secretary of State but has a principal place of business at: 110
International Way, Springfield OR 97477.

19.

Defendant HH regularly uses instruments of interstate commerce--such as using
an interstate phone system to make long distance calls, transmission of documents via
facsimile transmitted over interstate phone systems, utilizing the US mails to send
collections letters and legal documents; the principal purpose of which is the collection
of consumer debts that were defaulted prior to HH's representation and collection
efforts.

20.

Plaintiffs allege on information and belief that in the three years before this
action, HH regularly filed actions each month to collect defaulted consumer debts
owed by individuals to persons other than HH, and particularly since  2024 made a

concerted effort on behalf of co-defendant SELCO to seek court authorization to sell

the homes of approximately 30 Oregon consumers based upon consumer debt

judgments.

21.

Plaintiffs further allege on information and belief that HH has sought to

collect hundreds of other consumer debts owed by individuals to persons other than

HH through collection attempts that did not involve filing a collection lawsuit.

22.

Upon information and belief, Plaintiffs allege HH has attorneys and staff

whose duties include collecting consumer debts through collection, execution, and

bankruptcy proceedings. HH asserts on its website that it " . . . represent[s]

lenders." And that HH has " . . . the largest creditor's rights and bankruptcy

practice in the region."

23.

Plaintiffs further allege on information and belief that HH earns at least 10%

of its annual gross revenue from consumer debt collection work.

24.

HH has clients from whom it has accepted consumer debt collection work or

undertaken debt collection efforts on their behalf regularly for the last three years

preceding the filing of this action.

25.

HH's debt collection clients include persons engaged in consumer transactions.

26.

At all times material, upon information and belief, most of the debt that HH collected or attempted to collect were obligations or alleged obligations of individuals to pay money arising out of a transaction in which the money, property, insurance, or services that were the subject of the transaction were primarily for personal, family, or household purposes.

27.

Upon information and belief, HH is and was a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6) at all times relevant to the allegations set forth herein.

28.

Upon information and belief, SELCO is and was a "creditor" as the term is defined by ORS 646.639(1)(e), a "person" as the term is defined by ORS 646.639(1)(l), and a "debt collector" as the term is defined by ORS 646.639(1)(h) at all times relevant to the allegations set forth herein.

29.

Upon information and belief, HH is and was a "debt collector" as the term is defined by ORS 646.639(1)(h) and a "person" as the term is defined by ORS 646.639(1)(l) at all times relevant to the allegations set forth herein.

30.

At all times herein, the collection services provided by HH to SELCO, including those performed with respect to investigating the legal availability and requirements for executing against residential real property and providing all required notices, were within the definition of "real estate, goods or services" ("services") under ORS 646.605(6) of the UTPA, and otherwise governed by the UTPA, ORS 646.605 et seq. Specifically, in providing its debt collection services, HH acted within the course of its "business, vocation or occupation" as provided for under ORS 646.608(1) of the UTPA and *Daniel N. Gordon, an Or. Prof'l Corp. v. Rosenblum*, 361 Or 352, 368-369, 393 P.3d 1122 (2017).

31.

At all times material hereto, HH was acting within its capacity as agent for and on behalf of its client SELCO, and all actions alleged herein taken by HH were within the scope of HH's agency and authority given to HH by SELCO.

## FACTUAL ALLEGATIONS

32.

On or about January 23, 2023, Jackson County Circuit Court entered a default judgment against plaintiff Mr. Sandoval in Case Number 22CV39304 ("Collection Case") for an alleged debt that was originally incurred for personal family and/or household purposes.

33.

On or about August 30, 2024, HH filed a substitution of counsel for Nancy K. Curry to represent SELCO as its attorney in fact in the Collection Case.

34.

Also on or about August 30, 2024, HH, via agent, partner and/or employee, Ms. Cary, filed a motion ("Motion for Sale") on behalf of SELCO for an order authorizing a sale of all the interests of Jose Rogelio Hernandez in real property located at 7864 Laura Lane, White City, OR 97503 ("Plaintiffs' Residence").

35.

In the supporting sworn affidavit of Ms. Cary, HH further confounds the intended target of SELCO's Motion for Sale, stating SELCO seeks an order authorizing the sale of "Defendant's" interests in 7864 Laura Lane, White City, OR 97503.

36.

The Circuit Court set a hearing on SELCO's motion for October 14, 2024.

37.

Despite the clear requirement of ORS 18.908 that notice of the hearing be served via ORCP 7 and be mailed via first class mail to the residential property address subject to the motion to sell, HH, on behalf of SELCO, filed a notice of mailing stating it was mailed to the Plaintiffs' Residence on September 20, 2024. There was no other return of service.

38.

Upon information and belief, SELCO and HH intentionally or recklessly made no attempt to comply with the legally required service requirement prior to the October 14, 2024 hearing.

39.

Upon information and belief, on or about September 20, 2024, SELCO via HH sent copies of the Motion for Sale and separate notices of the October 14, 2024 hearing to Mr. Sandoval and to Ms. Pereschica.

40.

Upon information and belief, on or about September 20, 2024, SELCO and HH contacted Ms. Pereschica in an effort to collect Mr. Sandoval's alleged debt by sending Ms. Pereschica a notice that SELCO asked the court to "order the sheriff to sell property located at 7864 Laura Lane, White City, OR 97503, to satisfy the judgment against Rafael Sandoval . . . ." ("Third Party Notice").   The Third Party Notice was misleading in referring to a sale of "your property" and "the property", whereas the motion itself sought authorization to sell a mere "interest" in the property, the interest of Jose Rogelio Hernandez.

41.

The Third-Party Notice told Ms. Pereschica that if she wished to protect Plaintiff's Residence she should come to the scheduled hearing.

42.

Ms. Pereschica was upset and scared that her family's home was going to be sold and confused about why her family's home would be sold to satisfy her Mr. Sandoval's or Mr. Hernandez's alleged debts.

43.

Upon information and belief, the notice and motion for sale sent to Ms. Pereschica dated September 20, 2024 was HH's initial communication with Ms. Pereschica.

44.

Upon information and belief, on or about September 20, 2024, SELCO and HH contacted Mr. Sandoval in an effort to collect Mr. Sandoval's alleged debt by providing a notice stating that SELCO asked the court to "order the sheriff to sell property located at 7864 Laura Lane, White City, OR 97503, to satisfy the judgment against Rafael Sandoval . . . ." This notice was misleading in referring to a sale of "your property" and "the property", whereas the motion itself sought authorization to sell a mere "interest" in the property, the interest of Jose Rogelio Hernandez.

45.

Mr. Sandoval was upset and scared that his family's home would be sold and his family would lose their home.

46.

Upon information and belief, the notice and motion for sale sent to Mr. Sandoval ("Initial Communication") dated September 20, 2024 was HH's initial communication with Mr. Sandoval.

47.

The Initial Communication to Mr. Sandoval did not contain initial communication language required by 15 U.S.C. § 1692g(a) nor 12 C.F.R. 1006.18(e) and 1006.34(c).

48.   .

The Third-Party Notice did not contain initial communication language required by 15 U.S.C. § 1692g(a) nor 12 C.F.R. 1006.18(e) and 1006.34(c).

49.   .

Neither the Initial Communication to Mr. Sandoval nor the Third-Party Notice indicated that the debt could be disputed in writing, nor any instructions to dispute the alleged debt.

50.   .

Mr. Sandoval and Ms. Pereschica were so scared and distraught that they sought legal counsel for representation at the October 14, 2024 hearing.  During the course of this representation, they incurred costs for a title report to assist in their defense.  The title report verified that they both owned the family home, which was subject to a trust deed and other judgment liens against Mr. Sandoval.

51.

A hearing was scheduled in Circuit Court on SELCO's motion for  October 14, 2024 hearing.  Cary appeared for said hearing remotely to seek relief even though Mr. Sandoval had not been served as required by law.   Ms. Pereschica appeared with legal counsel at the hearing in person who explained that the hearing could not proceed because of the lack of service.  The Circuit Court allowed the matter to be reset for a later date after Cary acknowledged the lack of service.

52.

SELCO and HH questioned why Ms. Pereschica appeared at the hearing despite the fact that they sent her a notice telling her she needed to appear.

53.

SELCO, via HH sought to reset the hearing to February 10, 2025.

54.

Effective January 1, 2025, the homestead exemption was increased to $150,000 for one judgment debtor, effective as to any writs of execution issued on or after January 1, 2025. No writ of execution was issued prior to this date.

55.

Despite knowing that no writ could issue prior to January 1, 2025, on or about December 23, 2024, SELCO again mailed the previous confusing motion and notice, again mailing a copy directly to Ms. Pereschica and another to Mr. Sandoval.

56.

The December 23, 2024 notices were false and misleading just as the previous attempts were, with additional erroneous statements that Mr. Sandoval would only be entitled to a total of $50,000 homestead exemption, when in fact he was entitled to a $150,000 exemption.

57. .

On or about February 27, 2025, SELCO via HH again intentionally and knowing the falsity or with a reckless disregard for the likelihood of harm to Mr. Sandoval and Ms. Pereschica, caused the erroneous and confusing and false notice and motion with a false name, false exemption amounts to be communicated to Mr. Sandoval and Ms. Pereschica.

58. .

SELCO and HH attached a title report showing the survivorship language of Mr. Sandoval and Ms. Pereschica interest in Plaintiffs' Residence.

59. .

Under Oregon law the survivorship language included in Mr. Sandoval and Ms. Pereschica Trust Deed for Plaintiffs' Residence created indestructible life estates with mutual contingent remainder interests for each are known as an *Erickson* Estate.

60.

A judgment creditor attempting to sell one owner's interest in real property held by an Erickson Estate only has available the debtor's contingent remainder interest.

61.

SELCO and HH attached a title report to their motion to sell, which identified a mortgage and two senior judgment liens on the property as well as the *Erickson* Estate. Plaintiffs' own title report showed an additional judgment lien against the property.

62.

Case law shows that the contingent remainder interests are often too speculative and of nominal value where there is no present possessory right to the property because of the indestructibility of the non-debtor spouse's interest. *See In re Pietz*, 221 F.3d, 1114, 1118 (9th Cir. 2000) (confirming that *Odegaard*, 31 B.R. 718, 720 (Bankr. D. Or.)) is correct that under state law the only right that could be sold or purchased at execution is the debtor's indestructible contingent remainder interests).

63.

Upon information and belief, SELCO and HH knew, or reasonably should have known that they could not sell the Plaintiffs' Residence at sheriff's sale due to the *Erikson* Estate in addition to the other senior encumbrances. Moreover, they knew or reasonably should have known that it would be a bad financial decision on

their part to do so given the value and location of the property, the costs of sale, the amount of debt already against it, and the lack of any equity due to the $150,000 homestead exemption which would have to be paid by SELCO to Mr. Sandoval to proceed with any such sale.  Such a bad financial decision by SELCO would be in violation of its fiduciary duties to provide for the financial well-being and act in the best interests of the members of its credit union.

64.

Upon information and belief, SELCO and HH knew or reasonably should have known that that there was a high likelihood of harm caused by their false efforts to sell the property when SELCO and/or HH knew or reasonably should have known that the Plaintiff's Residence could not be sold to satisfy the debt.

65.

These actions against Plaintiffs are not made in isolation.  Upon information and belief, SELCO and HH are frightening similarly situated Oregon consumer debtors by serving them with papers telling them that there is going to be a hearing on the sale of their home while knowing or recklessly disregarding that SELCO and HH are not going to and cannot legally sell the homes.  Even if SELCO and HH could conduct such a sale, they do not actually intend to do so because of the aforementioned financial considerations, including for example the requirement to pay y $150,000 to Mr. Sandoval for his homestead exemption without getting any present possessory interest due to the *Erickson* estate.

66.

Plaintiff's initial informal discovery uncovered approximately 30 similar cases in which authorization to sell consumer's homes was sought by SELCO and/or HH in the past year, which would require SELCO to pay at least $1.2 million dollars for homestead exemptions at the 2024 amount, or $4.5 million at the new 2025 rates.

67.

Upon information and belief, SELCO and HH knew they were not going to actually sell and/or credit bid and purchase properties and pay out for the exemptions. SELCO with HH's representation is to goal was to use something they could not and would not do to frighten the judgment debtors, their spouses, and families into making payments on the judgments.

68.

Upon information and belief, this scare tactic resulted in complete payment of the judgments in more than 5 of these cases, partial payments in several other cases, while these scare tactics are still in progress in other cases.

69.

HH used unfair, misleading, and deceptive means that caused a likelihood of confusion as to the nature and quality of the judgment lien and these unfair misrepresentations caused actual harm to Mr. Sandoval and Ms. Pereschica in the form of legal fees, filing costs, title report fees, postage costs, and lost wages, in addition to non-economic damages.

**<u>FIRST CLAIM FOR RELIEF: VIOLATIONS OF FDCPA—15 U.S.C. § 1962 et seq. and 12 C.F.R. § 1006 et seq. (Regulation F).</u>**

**<u>(AS TO BOTH Mr. Sandoval and Ms. Pereschica)</u>**

70.

The Plaintiffs individually restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

71.

Mr. Sandoval is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

72.

Ms. Pereschica is a consumer as that term is defined by 15 U.S.C. § 1692a(3).

73.

HH is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

74.

HH is not exempted from the FDCPA under any of the enumerated exceptions set forth in 15 U.S.C. § 1692a(6)(F).

75.

HH violated the FDCPA by one or more of the following actions:

1) As to Mr. Sandoval only:

    (a)    HH failed to identify a means of dispute in writing in the March 1,2022 Letter in violation of 12 C.F.R. § 1006.34(c) and 15 U.S.C. § 1692g;

(b)     HH communicated to Ms. Pereschica regarding Mr. Sandoval's alleged judgment debt in violation of 15 U.S. Code § 1692c(b) and 12 C.F.R. § 1006.06(d).

2) As to Ms. Pereschica only:

(b)     HH failed to identify a means of dispute in writing in the March 1, 2022 Letter in violation of 12 C.F.R. § 1006.34(c) and 15 U.S.C. § 1692g;

3) As to both Plaintiffs:

(a)     Upon information and belief, HH, on behalf of SELCO, used false and misleading means by unfairly moving for sale when it knew it was not legally able to do so, as part of a greater intentional scheme to collect the judgment amount from Mr. Sandoval and Ms. Pereschica. 15 U.S. Code § 1692e(4), 1692e(5).

(b)     The unfair failure to notice the original hearing via the required method of service in violation of 15 U.S. Code § 1692f.

(c)     The materially false and/or confusing statements about whether their home or an interest therein would be sold, whose interest was being sold, or that a third party had an interest in their home, in violation of 15 U.S. Code § 1692e, 1692e(2)(a) and 1692f.

76.

As an actual and proximate result of HH's violation of the FDCPA, Mr. Sandoval incurred and is entitled to  (a) actual damages in the amount of court fees,

postage, lost wages,; (b) noneconomic damages for emotional distress, worry, anxiety, embarrassment and shame in an amount to be proven at trial; and (c) statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

77.

As an actual and proximate result of HH's violation of the FDCPA as alleged above, Ms. Pereschica incurred and is entitled to (a) actual damages in the amount of actual damages in the amount of court fees, postage, and loss of income; (b) noneconomic damages for emotional distress, worry, anxiety, sleeplessness, shame, and embarrassment in an amount to be proven at trial; and (c) statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

78.

As an actual and proximate result of defendants' violations of the FDCPA as alleged above, Mr. Buchheim is entitled to reasonable fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

79.

As an actual and proximate result of defendants' violations of the FDCPA as alleged above, Mrs. Buchheim is entitled to reasonable fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## SECOND CLAIM FOR RELIEF: VIOLATIONS OF UTPA—ORS 646.608 and 646.638.

### (AS TO BOTH Mr. Sandoval and Ms. Pereschica)
### (Against HH)

80.

The Plaintiffs incorporate the preceding paragraphs of this complaint.

81.

In the course of their businesses as debt collectors, HH's violations of the UTPA include HH's willful motion to sell Plaintiff's Residence where it could not in fact be sold above the allowed exemption amount, where HH used the likelihood of confusion or of misunderstanding as to the true status and nature of the underlying debt and judgment, including whether the residence could be sold in violation of ORS 646.608(1)(b) and (e).

82.

The violations of the UTPA above alleged caused the Plaintiffs to suffer an ascertainable loss of money and property, in the form of incurring title report fees, , court fees and legal expenses, lost wages due to missed work, and having to pay to litigate the matter just to get answers about what HH was in fact alleging.

83.

HH's conduct as alleged above was willful in that it knew or reasonably should have known that its conduct was in violation of the UTPA.

84.

As a result of the HH's violation of the UTPA as alleged above, Mr. Sandoval is entitled to the greater of her actual damages or $200, and reasonable fees and costs, pursuant to ORS 646.638.

85.

As a result of the defendants' violation of the UTPA as alleged above, Ms. Pereschica is entitled to the greater of her actual damages or $200, and reasonable fees and costs, pursuant to ORS 646.638.

86.

HH's conduct in violation of the UTPA was carried out with malice and/or a reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the welfare of others, including the Plaintiffs, as well as HH's societal obligations. Therefore, an award of punitive damages is proper and an amount of $100,000 is a just amount to punish HH's misconduct and deter similar misconduct from occurring in the future.

## THIRD CLAIM FOR RELIEF: VIOLATIONS OF OUDCPA—ORS 646.639.

### (AS TO BOTH Mr. Sandoval and Ms. Pereschica)
### (Against HH and SELCO)

87.

The Plaintiffs individually restate and incorporate herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

88.

The debt here at issue is a consumer debt as defined by ORS 646.639(1)(f).

89.

At all times material herein, HH's actions were willful in that it knew or reasonably should have known that its actions were violations of the OUDCPA.

90.

At all times material herein, SELCO's actions were willful in that it knew or reasonably should have known that its actions were violations of the OUDCPA.

91.

HH and SELCO proceeded towards selling an interest in Plaintiff's family home without any intention of paying Mr. Sandoval's full homestead exemption, while having reason to know that the law did not allow them to sell such interest, or to sell it without payment of the full exemption.

92.

HH and SELCO willfully scared Plaintiffs into believing they would sell their family home, where they reside with their two young children, even though it is not HH nor SELCO's regular practice to sell judgment debtors' homes.

93.

HH and SELCO willfully scared Ms. Pereschica into believing they could sell the family home although HH and SELCO both knew or had reason to know the remedy to sell the entire home did not exist in violation of ORS 646.639(2)(k).

94.

HH and SELCO willfully communicated that attorney fees would be added to the alleged debt for it's attempts to seek an order allowing sale of the Plaintiff's home, despite the fact that HH and SELCO both knew that they were not permitted to collect those fees because there was not a basis to sell the home nor Mr. Sandoval's contingent remainder interest in violation, there was no right to attorney fees against Ms. Pereschica, and such fees would not be allowed as reasonable in any event  ORS 646.639(2)(m) &(n).

95.

As a result of HH's and SELCO's actions violating the OUDPCA, Plaintiffs were confused and scared and pressured into paying instead of asserting their rights and valid defenses. As a result of being lied to and misled, without any prior legal training, Plaintiffs sought out legal counsel and incurred expenses obtaining title reports, having counsel appear in court, additional legal expenses, and lost wages, all to their economic damage in an amount to be proven at trial.

93.

As a result of HH and SELCO's actions, Plaintiffs have been damaged emotionally, resulting confusion, stress, worry and sleeplessness, frustration to her non-economic damage in the amount to be determined at trial.

94.

Plaintiffs are entitled to a declaration that HH and SELCO violated the OUDCPA, or to recover from HH and SELCO jointly and severally her actual

damages, including non-economic damages, if greater than the statutory damages of $1,000, as determined by a jury, together with attorney fees and costs.

95.

The conduct of SELCO and HH in violation of the OUDCPA was carried out with malice and/or a reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the welfare of others, including the Plaintiffs, as well as the societal obligations of SELCO and HH. Therefore, an award of punitive damages is proper and an amount of $100,000 is a just amount to punish the misconduct and deter similar misconduct from occurring in the future.

**WHEREFORE**, Plaintiffs respectfully pray that judgment be entered against defendants HH and SELCO jointly and severally as follows:

a) A declaratory judgment that Defendants' conduct violated the FDCPA, OUDCPA, and UTPA;

b) Actual damages including economic and noneconomic damages to Mr. Sandoval determined pursuant to 15 U.S.C. §1692k(a)(1);

c) Actual damages including economic and noneconomic damages to Ms. Pereschica determined pursuant to 15 U.S.C. §1692k(a)(1);

d) Maximum statutory damages to Mr. Sandoval pursuant to 15 U.S.C. §1692k(a)(2)(A);

e) Maximum statutory damages to Ms. Pereschica pursuant to 15 U.S.C. §1692k(a)(2)(A);

f) The greater of Mr. Sandoval's economic and non-economic damages or $1,000, pursuant to ORS 646.638(1);

g) The greater of Ms. Pereschica economic and non-economic damages or $1,000, pursuant to ORS 646.638(1);

h) Punitive damages on behalf of both Mr. Sandoval and Ms. Pereschica, pursuant to the OUDCPA and the UTPA in the amount of $100,000 for each claim, respectively;

i) for an award of costs of litigation and reasonable attorney fees incurred by Mr. Sandoval in prosecuting this case, pursuant to 15 U.S.C. § 1692k(a)(3) and ORS 646.638(3);

j) for an award of costs of litigation and reasonable attorney fees incurred by Ms. Pereschica in prosecuting this case, pursuant to 15 U.S.C. § 1692k(a)(3) and ORS 646.638(3); and

k) For all such further relief that the Court may deem just and appropriate.

//

//

//

//

//

//

//

//

## <u>JURY DEMAND</u>

Mr. Sandoval and Ms. Pereschica are entitled to and hereby respectfully demands a trial by jury.


Dated this 26th day of March, 2025.

**Mertens Law, LLC**

<u>/s/ Chris Mertens</u>
Chris Mertens, OSB #092230
Mertens Law, LLC
850 S.E. 3rd Avenue, Suite 302
Portland, Oregon 97214
Tel: 503.836.7673
Fax: 503.206.0115
Chris@MertensCSBLaw.com


**Law Office of Matthew Sutton**

Matthew Sutton, OSB No. 924797
Law Office of Matthew Sutton
205 Crater Lake Avenue
Medford, OR 97504
Telephone: (541) 772-8050
ms@matthewsuttonlaw.com


Of Attorneys for the Plaintiff